UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 14cr10284 – |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| (1) DUSTIN J. DENUNZIO, | ) | 18 U.S.C. § 371 – Conspiracy |
| (2) ANTHONY GATTINERI, and | ) | |
| (3) CHARLES A. LIGHTBODY | ) | 18 U.S.C. § 1343 – Wire Fraud |
| | ) | |
| Defendants | ) | 18 U.S.C. § 2 – Aiding and Abetting |
| | ) | |
| | ) | 18 U.S.C. § 981 & 28 U.S.C. § 2461 |
| | ) | – Forfeiture Allegation |

## INDICTMENT

The Grand Jury charges that:

## COUNT ONE:
(18 U.S.C. § 371 – Conspiracy to Commit Wire Fraud)

At times relevant to this Indictment:

### Relevant Individuals and Entities

1. Wynn Resorts Limited ("Wynn") was a public company that owned and operated a casino resort property in Las Vegas, Nevada. Wynn also owned the majority of a company that owned and operated a hotel resort property in Macau, China. Wynn held a Nevada state gaming license and a city casino license in Macau. Wynn was subject to ongoing regulation by both Nevada and Macau gaming authorities in order to maintain its licenses.

2. The Massachusetts Gaming Commission (the "MGC") was a five-member board responsible for developing and managing the process to select, license, oversee, and regulate all expanded gaming facilities in the Commonwealth of Massachusetts. Among other things, the MGC was responsible for evaluating applications for resort casino licenses in Massachusetts.

1

3. The Investigations and Enforcement Bureau (the "IEB") of the MGC ensured compliance with all state legislation and regulations promulgated by the MGC. Among other things, the IEB was responsible for investigating the suitability of gaming license applicants and all parties in interest to the gaming license.

4. FBT Everett LLC ("FBT") was a Massachusetts Limited Liability Company that held title to a parcel of land located near Horizon Way in Everett and Boston, Massachusetts (the "Everett Parcel"). The manager of FBT was The DeNunzio Group, LLC.

5. Defendant DUSTIN J. DENUNZIO resided in Cambridge, Massachusetts and was the sole member and manager of The DeNunzio Group, LLC. No later than approximately May 2012, The DeNunzio Group, LLC held a three percent interest in FBT and the Everett Parcel.

6. Defendant ANTHONY GATTINERI resided in Winchester, Massachusetts and had a financial interest in the Everett Parcel.

7. Defendant CHARLES A. LIGHTBODY resided in Revere, Massachusetts and had a financial interest in the Everett Parcel. LIGHTBODY was a convicted felon.

8. An individual known to the grand jury and referred to herein as "John Doe" resided in Lynnfield, Massachusetts and had a financial interest in the Everett Parcel.

### The Massachusetts Expanded Gaming Act

9. The 2011 Massachusetts Expanded Gaming Act provides for up to three Category 1 destination resort casino licenses, one in each of three geographical regions within Massachusetts. Region A includes most of Eastern Massachusetts, including Everett, Revere and Boston. Applicants for a resort casino license were required to submit two applications. The Phase 1 application focused on the qualifications and suitability of the applicant and all parties in interest to the gaming license, including affiliates and close associates and the financial resources of the applicant. The Phase 2

application focused on the site, design, finance, operation, community mitigation and other attributes of the gaming facility itself.

10. The MGC would not award a Category 1 destination resort casino license if it determined that LIGHTBODY would profit from the award of such license.

### The FBT-Wynn Option Agreement

11. In or around July 2012, FBT began courting various casino operators and investment banks with the goal of entering into an option agreement for the sale of the Everett Parcel, contingent on the award of a Category 1 resort casino license to the purchaser.

12. On December 19, 2012, Wynn and FBT entered into an Option Agreement whereby Wynn agreed to pay FBT $100,000 per month for the right to purchase the Everett Parcel for $75 million in the event Wynn was awarded a Category 1 destination resort casino license. Beginning in or about December 2012 and continuing until at least September 2014, Wynn paid FBT $100,000 per month pursuant to the Option Agreement.

13. Wynn submitted its Phase 1 application to the MGC, together with a $400,000 non-refundable license fee, on or about January 14 and 15, 2013. In its application, Wynn proposed to locate a destination resort casino on the Everett Parcel.

## The Conspiracy to Commit Wire Fraud

14. Beginning in or about December 2012, and continuing through in or about July 2013, the exact dates being unknown to the Grand Jury, in the District of Massachusetts and elsewhere, the defendants,

**(1) DUSTIN J. DENUNZIO,
(2) ANTHONY GATTINERI, and
(3) CHARLES A. LIGHTBODY,**

the defendants herein, did unlawfully and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to commit an offense against the United States, wire fraud in violation of 18 U.S.C. § 1343, to wit: having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice and attempting to do so.

15. It was the purpose and objective of the conspiracy to enrich its members by concealing from Wynn and the MGC the financial interests of LIGHTBODY, a convicted felon and known associate of the New England Family of La Cosa Nostra (the "NELCN"), in the Everett Parcel and to obtain money from Wynn in exchange for the Everett Parcel on the basis of false representations and concealment of material facts concerning the financial interests in the Everett Parcel.

## **Manner and Means**

Among the means and methods by which the coconspirators carried out the conspiracy were the following:

16. LIGHTBODY was a convicted felon and known associate of the NELCN. In particular, LIGHTBODY was an associate of an imprisoned NELCN soldier known to the grand jury and referred to herein as "Prisoner 1," and contributed funds to Prisoner 1 since Prisoner 1's arrest. DENUNZIO, GATTINERI and LIGHTBODY knew that, given LIGHTBODY's criminal history and NELCN associations, LIGHTBODY's financial interest in the Everett Parcel would adversely impact FBT's negotiation of an option agreement for the Everett Parcel and Wynn's ability to secure a license for a destination resort casino located on the Everett Parcel. Therefore, beginning in or about December 2012, DENUNZIO, GATTINERI and LIGHTBODY conspired to conceal LIGHTBODY's financial interest in the Everett Parcel from Wynn and the MGC, in order to obtain money from Wynn for the Everett Parcel.

17. In order to achieve the goals of the conspiracy, DENUNZIO, GATTINERI and LIGHTBODY arranged for LIGHTBODY's name to be removed from FBT ownership documents even though, in fact, LIGHTBODY retained a financial interest in the Everett Parcel. Specifically, in or about December 2012, DENUNZIO and LIGHTBODY falsely represented to FBT's attorney that LIGHTBODY had agreed to transfer his interest in FBT to GATTINERI. Around the same time, DENUNZIO asked FBT's attorneys to draft paperwork purporting to reflect the transfer of LIGHTBODY's interest in FBT to GATTINERI, in exchange for a $1.7 million promissory note, knowing that such transfer had not, in fact, occurred.

18. It was a part of the conspiracy that, on or about January 28, 2013, DENUNZIO fraudulently arranged for LIGHTBODY and GATTINERI to execute a Memorandum of Transfer and

Promissory Note, both backdated to December 14, 2012. Subsequently, in or about July 2013, after the IEB began conducting its suitability investigation and interviewed him, DENUNZIO further backdated the December 14, 2012 Memorandum of Transfer and Promissory Note to August 15, 2012, and arranged for LIGHTBODY and GATTINERI to execute the fraudulent documents.

19. It was a part of the conspiracy that on or about January 17, 2013, DENUNZIO sent an email to Wynn's General Counsel falsely stating that DENUNZIO, GATTINERI and another individual known to the grand jury were the only people who had interest in FBT. In truth and in fact, as DENUNZIO then well knew, LIGHTBODY and John Doe had financial interests in FBT which the defendants concealed from Wynn and the MGC.

20. In order to achieve the goals of the conspiracy, DENUNZIO, GATTINERI and LIGHTBODY all misled the MGC's IEB investigators about LIGHTBODY's and John Doe's interests in the Everett Parcel. Specifically, DENUNZIO, GATTINERI and LIGHTBODY all falsely told the IEB investigators that LIGHTBODY transferred his interest in the Everett Parcel to GATTINERI in 2012, and that no individuals other than DENUNZIO, GATTINERI and an individual known to the grand jury who was not John Doe would benefit financially from the sale of the Everett Parcel to Wynn. In truth and in fact, as DENUNZIO, GATTINERI and LIGHTBODY then well knew, LIGHTBODY and John Doe had and maintained financial interests in FBT.

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, the defendants and their coconspirators committed, and caused to be committed, the following overt acts, among others, in the District of Massachusetts and elsewhere:

21. On or about December 10, 2012, LIGHTBODY, DENUNZIO and GATTINERI communicated with each other and with others known and unknown to the grand jury regarding LIGHTBODY's financial interest in FBT.

22. On or about December 11, 2012, LIGHTBODY responded to Prisoner 1's instruction that he "double blind" and "triple blind" his interest in the Everett Parcel by saying, "Well that's what I'm doing."

23. Also on or about December 11, 2012, after GATTINERI and DENUNZIO emailed one another regarding whether they should talk or meet that day, GATTINERI responded to DENUNZIO, "OK. Anything we do that's hot we meet in person."

24. Between December 1, 2012 and December 19, 2012, DENUNZIO falsely told FBT's attorney that LIGHTBODY had agreed to transfer his interest in FBT to GATTINERI in exchange for a $1.7 million promissory note.

25. Between December 1, 2012 and December 19, 2012, DENUNZIO asked FBT's attorney to prepare paperwork documenting the transaction described in Paragraph 24.

26. Between December 1, 2012 and December 19, 2012, DENUNZIO asked FBT's attorney to tell Wynn's representatives that LIGHTBODY no longer had an interest or was transferring his interest in FBT.

27. In or about and between December 1, 2012 and December 19, 2012, DENUNZIO falsely stated to FBT's attorney that DENUNZIO did not have LIGHTBODY's phone number in response to FBT's attorney's request for it.

28. In or about and between December 16, 2012 and December 18, 2012, LIGHTBODY called FBT's attorney and falsely stated that he had agreed to transfer his interest in FBT to GATTINERI.

29. On or about December 19, 2012, using the message, "Getting There.  Message from Wynn," DENUNZIO forwarded to GATTINERI and LIGHTBODY an email DENUNZIO received from a representative of Wynn stating that Wynn had signed the Option Agreement between Wynn and FBT.

30. On or about January 17, 2013, DENUNZIO sent an email to Wynn's General Counsel with the subject "Equity Holders in FBT – Everett, MA," in which DENUNZIO stated, "Per our conversation, below are the people who have interest in FBT Everett Realty LLC," and thereafter listed only himself, GATTINERI and another individual known to the grand jury.

31. On or about January 28, 2013, DENUNZIO arranged for GATTINERI and LIGHTBODY to execute a Memorandum of Transfer and Promissory Note dated December 14, 2012, fraudulently certifying that LIGHTBODY had transferred his interest in FBT to GATTINERI for a $1.7 million note on December 14, 2012.

32. In or around May 2013, DENUNZIO sent three emails to GATTINERI and another FBT member known to the grand jury that detailed public meetings regarding the Everett Parcel and Wynn's casino proposal.

33. In or around May 2012, within minutes of sending the three emails described in Paragraph 32 to GATTINERI and another FBT member known to the grand jury, DENUNZIO sent the same three emails to LIGHTBODY and John Doe.

34. On or about July 9, 2013, when questioned by IEB investigators about who had a financial interest in the Everett Parcel, DENUNZIO did not disclose that LIGHTBODY had a financial interest in the Everett Parcel.

35. On or about July 9, 2013, when questioned by IEB investigators about who had a financial interest in the Everett Parcel, DENUNZIO did not disclose that John Doe had a financial interest in the Everett Parcel.

36. On or about July 10, 2013, DENUNZIO told LIGHTBODY to instruct an individual known to the grand jury who was a former FBT member not to meet with IEB investigators, and to inform the former FBT member that LIGHTBODY was "bought out a long time ago" and had nothing to do with the Everett Parcel.

37. On or about July 10, 2013, LIGHTBODY called the former FBT member and told him that the IEB had not interviewed LIGHTBODY yet, because LIGHTBODY was "not on anything," and because "they're . . . not gonna find me anywhere you know what I mean?"

38. On or about July 10 and 11, 2013, DENUNZIO made false statements to the IEB regarding LIGHTBODY's financial interest in the Everett Parcel.

39. On or about July 10, 2013, DENUNZIO changed the date on the Memorandum of Transfer and Promissory Note from December 14, 2012 to August 15, 2012.

40. On or about July 10, 2013, DENUNZIO met LIGHTBODY at the Dunkin Donuts at 318 Broadway in Everett, Massachusetts, where LIGHTBODY signed a Memorandum of Transfer,

fraudulently certifying that he had agreed to transfer his financial interest in FBT to GATTINERI on or about August 15, 2012.

41.     On or about July 10, 2013, DENUNZIO instructed an employee of The DeNunzio Group, LLC to deliver the Memorandum of Transfer and Promissory Note to GATTINERI.

42.     On or about July 10, 2013, GATTINERI made false statements to IEB investigators regarding LIGHTBODY's financial interest in the Everett Parcel.

43.     On or about July 10, 2013, GATTINERI signed a Memorandum of Transfer and Promissory Note, fraudulently certifying that he had agreed to purchase LIGHTBODY's financial interest in FBT in exchange for a $1.7 million promissory note on or about August 15, 2012.

44.     On or about July 12 and 16, 2013, LIGHTBODY made false statements to IEB investigators regarding LIGHTBODY's financial interest in the Everett Parcel.

45.     On or before November 27, 2013, GATTINERI caused all of the emails dated between July 1, 2012 and February 1, 2013 to be removed from his Yahoo! email account, except six emails that were located in his Spam folder.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(18 U.S.C. § 1343 – Wire Fraud)

46. The allegations in paragraphs 1 through 13 and 15 through 45 are realleged and incorporated as if fully set forth herein.

47. On or about January 17, 2013, within the District of Massachusetts and elsewhere,

**(1) DUSTIN J. DENUNZIO,**
**(2) ANTHONY GATTINERI, and**
**(3) CHARLES A. LIGHTBODY,**

the defendants herein, each aiding and abetting the other, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, did cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice, and attempting to do so, to wit: DENUNZIO sent an email to the Wynn General Counsel with the subject "Equity Holders in FBT – Everett, MA," in which DENUNZIO stated, "Per our conversation, below are the people who have interest in FBT Everett Realty LLC," identifying only DENUNZIO, GATTINERI and an individual known to the grand jury.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## **FORFEITURE ALLEGATIONS**

(Forfeiture Allegations: 18 U.S.C. § 981 and 28 U.S.C. § 2461)

The Grand Jury further charges that:

1.    Upon conviction of any offense in violation of 18 U.S.C. §§ 371 or 1343 charged in this Indictment,

**(1) DUSTIN J. DENUNZIO,
(2) ANTHONY GATTINERI, and
(3) CHARLES A. LIGHTBODY,**

the defendants herein, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2.    If any of the property described in Paragraph 1 above, as a result of any act or omission of the defendant,

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to 21 U.S.C. § 853(p), incorporated by reference in 28 U.S.C. § 2461(c), to seek the forfeiture of any other property of the defendant up to the value of the property described in paragraphs 1 above.

All in accordance with Federal Rule of Criminal Procedure 32.2 and 18 U.S.C.
§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL,

Krista M. Jakes

FOREPERSON OF THE GRAND JURY

KRISTINA E. BARCLAY
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS October 1, 2014

Returned into the District Court by the Grand Jurors and filed.

Lisa Belpedio

Deputy Clerk

3:20p.